UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| KENNETH L. CAMERON, | ) No. ED CV 18-42-PLA |
| Plaintiff, | ) **MEMORANDUM OPINION AND ORDER** |
| v. | ) |
| NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS FOR THE SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on January 9, 2018, seeking review of the Commissioner's[1] denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on February 23, 2018, and March 1, 2018. Pursuant to the Court's

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

Order, the parties filed a Joint Submission (alternatively "JS") on September 12, 2018, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on August 30, 1957. [Administrative Record ("AR") at 127.] He has past relevant work experience as a CAD designer/drafter. [AR at 588, 603.]

On August 20, 2012, plaintiff protectively filed an application for a period of disability and DIB alleging that he has been unable to work since November 20, 2008. [AR at 22, 127-34.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 79-80.] A hearing was held on January 22, 2014, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 27-41.] A vocational expert ("VE") also testified. [AR at 36-39.] On February 13, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from November 20, 2008, the alleged onset date, through February 13, 2014, the date of the decision ("2014 Decision"). [AR at 14-23.] Plaintiff requested review of the 2014 Decision by the Appeals Council, which was denied on June 22, 2015 [AR at 1-6.] Plaintiff then filed an action with this Court in case number ED CV 15-1660-PLA, and on April 6, 2016, this Court remanded the matter. [AR at 653-66; see also AR at 667-69 (Appeals Council Remand Order).] On May 3, 2017, a remand hearing was held before the same ALJ, at which time plaintiff again appeared represented by an attorney and testified on his own behalf. [AR at 595-612.] A medical expert ("ME") and a different VE also testified. [AR at 598-601, 603-10.] On October 2, 2017, the ALJ issued a decision again concluding that plaintiff was not under a disability from November 20, 2008, the alleged onset date, through December 6, 2014, the date last insured. [AR at 588-89.] At that time, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.984. This action followed.

/

# III.
# **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

# IV.
# **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

/
/

## B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 20, 2008, the alleged onset date, through December 6, 2014, the date last insured. [AR at 580.] At step two, the ALJ concluded that plaintiff has the severe impairments of history of gunshot wound to the left shoulder and degenerative disc disease of the cervical spine.[2] [Id.] He also determined that plaintiff's alleged upper extremity impairments and mental impairment of anxiety-related disorder were nonsevere. [AR at 581.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 583.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. § 404.1567(b),[4] as follows:

> [C]an lift and carry 20 pounds occasionally and 10 pounds frequently, pushing and pulling within those weight limits; stand and walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday. [He] can occasionally climb ladders, but never climb ropes or scaffolds. He should avoid concentrated exposure to moving machinery and unprotected heights due to side effects of medication.[5]

---

[2] In his 2014 Decision, the ALJ determined that through the date of that decision, plaintiff had the severe impairments of gunshot wound to the left shoulder; complex regional pain syndrome; and degenerative disc disease of the cervical spine. [AR at 16.]

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[5] This RFC determination is in stark contrast to the ALJ's 2014 RFC determination that plaintiff could only occasionally push and/or pull with his left upper extremity, could only
(continued...)

[AR at 584.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform his past relevant work as a CAD designer/drafter. [AR at 588.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of November 20, 2008, through December 6, 2014, his date last insured. [AR at 588.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) determined, in contrast with the 2014 Decision, that plaintiff has no upper extremity impairments or limitations; and (2) rejected plaintiff's subjective symptom testimony. [JS at 5.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A. THE ALJ'S REVISION OF PLAINTIFF'S IMPAIRMENTS AND 2014 RFC**

In its April 6, 2016, remand order, the Court provided the following guidance to the ALJ on remand:

> First, the ALJ shall determine at step four, with the assistance of a VE, if necessary, whether, given the ALJ's RFC assessment, including plaintiff's limitations to occasional reaching with his left upper extremity, and occasional overhead reaching with both upper extremities, plaintiff is capable of performing his past relevant work as a CAD designer/drafter.[FN 8] If the ALJ determines that plaintiff is capable of performing his past relevant work, then the ALJ must also determine, with the assistance of a VE, whether there is a reasonable explanation for the inconsistency between plaintiff's assessed reaching limitations and the DOT job description for the CAD designer/drafter occupation, which requires frequent reaching.
>
> [FN 8] Nothing in this decision is intended to disturb the ALJ's RFC assessment or his step four finding that plaintiff's past relevant work was as a CAD designer/ drafter, DOT No. 007.281-010.

[AR at 664-65.] The Appeals Council, through its remand order, explicitly remanded for further

---

⁵(...continued)
occasionally reach in front and laterally with his left upper extremity, could only occasionally reach overhead bilaterally, and could never climb ladders. [AR at 18.] Indeed, this Court remanded the 2014 Decision to determine *only* whether, in light of plaintiff's RFC assessment and his limitations to occasional reaching with his left upper extremity, and occasional overhead reaching with both upper extremities, he was capable of performing his past relevant work as a CAD designer/drafter. [AR at 664-65.]

proceedings "consistent with the order of the court." [AR at 669.]

On remand, however, the ALJ inexplicably decided to consider new medical evidence and to call in a medical expert. Then, based on the testimony of the ME, he reconsidered steps one through four of his 2014 Decision and came to different conclusions regarding plaintiff's shoulder and cervical impairments and resulting reaching limitations. As a result, the ALJ determined that the occasional reaching limitations he had previously included in the 2014 RFC were no longer present. This was inconsistent with the order of remand and constitutes error. See Sullivan v. Hudson, 490 U.S. 877, 885-86, 109 S. Ct. 2248, 104 L. Ed. 2d 941 (1989); Ischay v. Barnhart, 383 F. Supp. 2d 1199, 1213-17, 1224 (C.D. Cal. 2005) (holding under the law of the case doctrine and the "broader" rule of mandate the ALJ abused his discretion by going beyond the issue identified in the district court's remand order, taking evidence on additional issues, "produc[ing] a third decision out of whole cloth," and denying benefits on remand at step four when the stipulated remand order did not authorize the ALJ "to disturb or revisit" any of the findings he made in steps one through four, and provided that "remand was necessary . . . on one narrow issue: . . . further vocational expert testimony"); Ruiz v. Apfel, 24 F. Supp. 2d 1045, 1050 (C.D. Cal.1998) (remanding for further administrative proceedings where the remand order "makes it very plain that the remand was for a limited purpose," and there was "no basis for the ALJ to review issues that had been determined in plaintiff's favor" and not appealed); Gallagher v. Astrue, 2009 WL 57033, at *3-7 (C.D. Cal. Jan. 6, 2009) (because remand was limited to step four and step five issues regarding plaintiff's past relevant work and alternate work, the ALJ committed legal error when he made a redetermination of the plaintiff's severe impairments at step two, reassessed the plaintiff's RFC at step four, and eliminated moderate limitations previously found); Allen v. Astrue, 2010 WL 4825925, at *6 (C.D. Cal. Nov. 2, 2010) ("[T]he stipulation for remand provided only that remand was necessary for the ALJ to . . . obtain additional evidence on one narrow issue -- Plaintiff's mental impairment"). As the Supreme Court explained in Sullivan:

> Where a court finds that the Secretary has committed a legal or factual error in evaluating a particular claim, the district court's remand order will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed. . . . Deviation from the court's remand order in the subsequent administrative proceedings is itself legal

1 error, subject to reversal on further judicial review.
2 Sullivan, 490 U.S. at 885-86 (citations omitted).

"The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case." United States v. Cote, 51 F.3d 178, 181 (9th Cir. 1995) (quoting Herrington v. Cty. of Sonoma, 12 F.3d 901, 904 (9th Cir. 1993) (internal quotation marks omitted)). Further, the "doctrine does not require that any issue actually have been adjudicated; rather, it applies to [the court's] explicit decisions as well as those issues decided by necessary implication." Ischay, 383 F. Supp. 2d at 1217 (internal quotation marks, citation and emphasis omitted).

The rule of mandate further prohibits a lower court, upon receiving the mandate of a higher court, from "vary[ing] it or examin[ing] it for any other purpose than execution"; however, "the lower court may consider and decide any matters left open by the mandate of the court." Cote, 51 F.3d at 181-82 (alterations and quotation marks omitted) (quoting In re Sanford Fork & Tool Co., 160 U.S. 247, 255, 256, 16 S. Ct. 291, 40 L. Ed. 414 (1895)).

Here, the ALJ committed legal error by deviating from the remand order. First, the remand order did not authorize the ALJ to redetermine the nature and severity of plaintiff's physical impairments at step two. By eliminating plaintiff's severe impairment of complex regional pain syndrome, and "downgrading" plaintiff's "gunshot wound to the left shoulder" to "history of gunshot wound to the left shoulder," the ALJ laid the foundation for a more expansive physical RFC than he found in his previous decision, that is, an RFC less favorable to plaintiff.

Second, the remand order specifically directed the ALJ to only *clarify*, given the ALJ's RFC assessment in the 2014 Decision, the impact of plaintiff's *occasional* reaching limitations on his ability to perform his past relevant work as a CAD designer/drafter, which, according to the DOT, requires f*requent* reaching. [AR at 664-65.] The Court also specifically stated that "**[n]othing** in this decision is intended to disturb the ALJ's RFC assessment or his step four finding that plaintiff's past relevant work was as a CAD designer/drafter, DOT No. 007.281-010." [AR at 665 (emphasis added).] Thus, the remand order did not leave open any additional matters for the ALJ to consider and decide.

Third, in an obvious effort to countermand the order of this Court, the ALJ did away with all of the "occasional" reaching limitations in his 2014 RFC determination, thereby completely side-stepping the remand order. Rather than comply with the "letter and spirit" of what plainly was a remand for a limited purpose, the ALJ revisited each step of the sequential evaluation procedure, narrowed the nature and combined severity of plaintiff's impairments, and eliminated the multiple "occasional" reaching limitations he was specifically directed to consider on remand. See Ischay, 383 F. Supp. 2d at 1214 ("The rule of mandate requires that, on remand, the lower court's actions must be consistent with both the letter and the spirit of the higher court's decision.") (citing Quern v. Jordan, 440 U.S. 332, 347 n.18, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979) (looking to whether post-mandate conduct of lower court was consistent "with either the spirit or the express terms of our decision")).

The ALJ rationalized his abandonment of the occasional reaching limitations he previously assessed by observing the following:

> [B]ased on new medical evidence and medical opinions since the prior decision, the undersigned determines [plaintiff's] [RFC] has changed as assessed below, in Finding 5. As discussed more thoroughly below, the undersigned finds the objective findings support no limitation related to [plaintiff's] arm or shoulders. [¶] Accordingly, this removes the need for [VE] testimony with regard to manipulative and reaching limitations. Nevertheless, the undersigned has sought [VE] assistance with determining the work available to [plaintiff] based on the [RFC] assessed in *this* decision.

[AR at 578 (emphasis added).] However, the testifying ME, who stated he had received exhibits 1 through 14F [AR at 598], referred *only* to Exhibit 1F in the record as the basis of his opinion [see 599, 601], i.e., he pointed to *nothing* in the new medical records, i.e., Exhibits 9F through 12F [AR at 772-951] to support his opinion regarding plaintiff's changed shoulder impairments and/or limitations.[6] Likewise, although the ALJ generally noted that he and the ME had reviewed exhibits

---

[6] Plaintiff pointed to two exhibits in the new medical evidence that support his position that his medical condition had *not* changed -- a December 15, 2015, x-ray that revealed degenerative disc disease from C5 to C7, due to "moderate narrowing of the disc spaces C5-6 and C6-7 and moderate spondylosis at these levels," and a record showing he had undergone a left shoulder steroid injection on November 21, 2016. [JS at 8 (citing AR at 871, 926).] Other new records (not mentioned by plaintiff) reflected that diagnostic testing showed there were "[m]ultiple metallic
(continued...)

1F through 14F [see AR at 585, 586], the only later-submitted exhibits he specifically referred to related to plaintiff's alleged mental health condition. [See AR at 587 (citing AR at 782, 783, 816, 840).]

Finally, on January 30, 2013, and May 8, 2013, the Commissioner's own non-examining reviewing physicians had assessed plaintiff with "additional . . . manipulative . . . limitations," including: (1) occasional pushing and/or pulling in the left upper extremity as evidenced by x-ray findings of "calcific tendonitis [sic]" and advanced cervical spondylosis with right foraminal encroachment at C5; and (2) occasional reaching, including overhead, by the left upper extremity, in front and/or laterally, and overhead bilaterally (based on the same x-ray findings). [AR at 47-48, 62-63.] Indeed, the ALJ *explicitly* relied on these assessments to support his February 13, 2014, decision, giving them "significant weight" and noting that he found the RFC assessed by these consultants -- which included the occasional reaching limitations -- to be "reasonable and consistent with the objective medical evidence." [AR at 21.] In the current decision on remand, however, although he accepted these reviewing consultants' "exertional, postural, and environmental limitations" as supported by the evidence, he now gave the reviewing consultants' "manipulative limitations . . . little weight," based on Dr. Schmitter's observation that the objective evidence regarding plaintiff's "upper extremities [is] mild including mild ulnar neuropathy and no nerve conduction studies." [AR at 587.]

The ALJ's unjustified failure to comply with the remand order constitutes reversible error.

However, because the ALJ complied *in part* with the Court's remand order by presenting the VE with hypothetical questions that included plaintiff's previous RFC determination, the Court will examine that testimony to determine whether the error was harmless.

The ALJ's first hypothetical to the VE went as follows:

---

[6](...continued)
fragments . . . seen in the soft tissues overlying the left scapula. Ill-defined calcific density is seen [in] the soft tissues related to the left scapula either arterial calcification or calcific tendinosis," and that plaintiff was also referred for acupuncture treatment and was prescribed a shoulder sling. [See AR at 848, 873, 925, 945.] Defendant, on the other hand, like the ME and the ALJ, points to no evidence in the "new" exhibits that might have even remotely supported either the ME's opinion or the ALJ's changed position that plaintiff had no reaching limitations. [See JS at 11-19.]

10

| | |
|---|---|
| 1 | [ALJ:] . . . I want you to consider a 60-year-old individual, that's only done [the] job [of CAD designer/drafter]. This individual has the following functional capacity. Can lift and carry 20 pounds occasionally, 10 pounds frequently. No restrictions on sit, stand, and walk except for six hours, in six hours. Push and pull is within the weight limits. . . . [¶] No limitations on ladders, but we're going to preclude ropes and scaffolds and ladders would be occasional only and should avoid unprotected and moving machinery and unprotected heights. Could that person do the past relevant work as [sic] [plaintiff]? |

[ALJ:] . . . I want you to consider a 60-year-old individual, that's only done [the] job [of CAD designer/drafter]. This individual has the following functional capacity. Can lift and carry 20 pounds occasionally, 10 pounds frequently. No restrictions on sit, stand, and walk except for six hours, in six hours. Push and pull is within the weight limits. . . . [¶] No limitations on ladders, but we're going to preclude ropes and scaffolds and ladders would be occasional only and should avoid unprotected and moving machinery and unprotected heights. Could that person do the past relevant work as [sic] [plaintiff]?

[VE:] Your Honor, were there, if you indicated any reaching limitations --

[ALJ:] No.

[VE:] -- I did not hear them.

[ALJ:] Did not.

[VE:] Okay, yes, would be able to do the past relevant work.

[AR at 603-04.] This hypothetical did *not* include plaintiff's previous 2014 RFC limitations of (1) only occasional pushing and/or pulling with the left upper extremity; (2) preclusion from climbing on ladders; (3) only occasional reaching in front and laterally with his left upper extremity; and (4) only occasional reaching overhead with his bilateral upper extremities. [See AR at 18.] Because it did not comply with the Court's remand order, this portion of the VE's testimony will not be considered.

The ALJ then suggested a second hypothetical:

[ALJ:] [L]ight, as I previously gave you, with the same for sit, stand and walk. Same for push and pull, but only occasional push or pull with left upper extremity. Precluded from ladders, ropes and scaffolds. With occasional reaching in front, and laterally with his left upper extremity. Occasionally reach overhead with his bilateral upper extremities. No limitations in handling or fingering with upper extremities and should avoid concentrated exposure to the moving machinery, unprotected moving machinery and dangerous, and unprotected heights. Could that person do the past relevant work of [plaintiff]?

[VE:] In my opinion, yes, but I need to explain.

[AR at 604-05.] The ALJ then asked the VE to explain his opinion:

[VE:] As it relates to reaching, and in this case, the left upper extremity, but it could be bilateral or right. The [DOT], in my opinion, is deficit [sic] in really explaining what reaching means. Extending hands or arms in any direction is a general definition. In my opinion, if the arms are supported, as I am supporting both arms at the keyboard, that the support is resting on my forearms, that is not extended reaching, but that is just my opinion.

11

| | |
|---|---|
| 1 | [ALJ:] Okay, have you done any surveys on that? |
| 2 | [VE:] I have not. |
| 3 | [ALJ:] Okay, so the DOT does go along with the definition as given by [t]he Agency, what the word reaching means, which is, Ruling 85-15, reaching is described, by the Agency, as extending the hands and arms in any direction. |
| 4 | |
| 5 | [VE:] Um-hum. That's exactly the definition I'm looking at. |
| 6 | [ALJ:] Okay. |
| 7 | [VE:] And my comments remain, are unchanged. |

[AR at 605.]

Plaintiff's counsel then attempted to clarify the VE's position:

[Counsel:] [S]o you're suggesting that the reaching that's described [in] the DOT is not the same as what this job actually requires?

[VE:] What, actually, what I'm saying is, the reaching, used in the DOT, is poorly defined, and so it's rather nebulous. Extending arms and hands in any direction.

[Counsel:] Right.

[VE:] That could be supported arms, or unsupported. In my opinion, extension of arms involves a lack of support.

[Counsel:] Okay.

[VE:] That's just my opinion, as I've said.

[Counsel:] But, you're suggesting that this job can be performed so long as the arms can be supported.

[VE:] Yes, at least, at least some of the day. In other words, we're talking about an occasional limitation.

[Counsel:] If . . . the hypothetical individual were limited to no more than occasional extension of the arm, meaning reaching out in front of them, whether supported or unsupported, does that have any effect on your testimony?

[VE:] Yes, it would eliminate the job.

[AR at 606.] Counsel then obtained testimony from plaintiff regarding his "typical set up" when performing his job, and the VE testified that as performed, plaintiff would not be able to perform this job with the suggested limitations, but still could perform it as it is done in the national economy. [AR at 608-09.] Counsel then asked the VE whether the DOT describes the CAD designer/drafter position as requiring frequent reaching. [AR at 610.] The VE confirmed that it did.

12

[Id.] Counsel then asked the VE whether the reaching described by plaintiff would be considered to be frequent, and the VE confirmed that it would be considered frequent but "only if you assume that reaching is all reaching, supported and unsupported arms, yes." [Id.]

Plaintiff argues that given the DOT description of the CAD designer/drafter position, "there is simply no way that an individual could engage in the variety of activities required in this occupation while their hands remain 'supported' throughout the majority of the work day" as suggested by the VE. [JS at 10.] The tasks as described in the DOT require *frequent* reaching and, plaintiff submits, there is no evidence offered to support the VE's description of how this occupation "could be performed in [a] primarily seated position with the arms fully supported." [Id.] Defendant generally argues that plaintiff did not provide a basis for establishing the reliability of the data cited for his proposition and that "substantial evidence supports the ALJ's reliance on the vocational expert's testimony." [JS at 17-18.] Defendant also submits that a VE's "recognized expertise provides the necessary foundation for his or her testimony." [JS at 19 (citation and internal quotation marks omitted).]

In determining whether appropriate jobs exist for a claimant, the VE generally will refer to the DOT. Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997). SSR 00-4p explicitly requires that the ALJ determine whether the VE's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation. See SSR 00-4p (stating that an ALJ must inquire whether a VE's testimony regarding "the requirements of a job or occupation" conflicts with the DOT). The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a VE's testimony, particularly in cases where the expert's testimony conflicts with the DOT. In making disability determinations, the ALJ may rely on the testimony of a VE that contradicts the DOT, but only insofar as the record contains *persuasive* evidence to support the deviation. Light, 119 F.3d at 793; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); Massachi, 486 F.3d at 1153. Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." SSR 00-4p. Thus, the ALJ must first determine whether a conflict exists, and if it does, the ALJ must then determine whether the VE's explanation for the conflict is reasonable

and whether a basis exists for relying on the expert rather than the DOT. Id. Only after determining whether the VE has deviated from the DOT, and whether any deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial evidence to support a disability determination. Massachi, 486 F.3d at 1152-54. Evidence sufficient to support a deviation from the DOT may be either specific findings of fact regarding a claimant's ability to perform particular jobs, or inferences drawn from the context of the expert's testimony. See Light, 119 F.3d at 1435 n.7 (ALJ provided sufficient support for deviation by noting that the VE described characteristics and requirements of jobs in the local area consistent with claimant's RFC); Terry v. Sullivan, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for deviation where VE's understanding of applicable legal standards is clear from context).[7]

Here, however, although the ALJ propounded a hypothetical to the VE that reflected the 2014 RFC limitations, the VE specifically noted that the term "reaching" as used in the DOT is "deficit [sic] in really explaining what reaching means," and stated that in his *opinion*, the term reaching as used in the DOT includes "supported" versus "unsupported" reaching, and if the hypothetical individual's arms were supported for some portion of the day, then the position of CAD designer/drafter requires only occasional reaching, i.e., his "opinion" as to the definition of "reaching" varies from, or conflicts with, the DOT definition of reaching as well as from the DOT job description requiring frequent reaching for this position. Even when the ALJ asked the VE about the basis for this opinion, the VE did not provide any "reasonable explanation," other than to state that it was just that -- an "opinion." [AR at 605.] Neither did the ALJ or defendant point to any persuasive evidence in the record to support the deviation. Additionally, because the VE testified that an individual limited to no more than occasional extension of the arms, whether supported or unsupported, could not perform the job of CAD designer/drafter [AR at 606], the error was not harmless -- and, given plaintiff's age and ability to perform less than a full range of light work, a finding of disability would have been mandated.

---

[7] The only thing that is clear here is that the ALJ, the ME, and the VE were all straining to find a way to determine that plaintiff did not have reaching limitations and/or that if he did, those limitations would not impact on his ability to perform his past relevant work.

14

## B. PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY

Under the circumstances here, the Court finds the issue of the ALJ's failure to comply with the stipulation for remand to be dispositive of this matter, and does not reach the remaining issue of the ALJ's similarly improper reconsideration of plaintiff's subjective symptom testimony.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, although a close call as to whether a remand for payment of payments is appropriate, it seems that there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ shall only determine at step four, with the assistance of a VE, if necessary, whether, given the severe impairments and RFC assessment determined in the 2014 Decision, including plaintiff's limitations to occasional reaching with his left upper extremity, and occasional overhead reaching with both upper extremities, and preclusion from climbing ladders, plaintiff is capable of performing his past relevant work as a CAD designer/drafter.[8] If the ALJ

---

[8] To be clear, nothing in this decision is intended to disturb the ALJ's step one through four findings in the 2014 Decision (which was based, in part, on Exhibits 1F through 8F in the Administrative Record), including plaintiff's severe impairments, the ALJ's RFC assessment, and his step four finding that plaintiff's past relevant work was as a CAD designer/drafter, DOT No. 007.281-010. The medical records included as Exhibits 9F through 14F of the Administrative Record shall not be considered on remand as to plaintiff's disability as of the date of the 2014 Decision.

determines that from November 20, 2008, the alleged onset date, through February 13, 2014, the date of the decision, plaintiff is capable of performing his past relevant work, then the ALJ must also determine, with the assistance of a VE, whether there is a <u>reasonable</u> explanation for the inconsistency between plaintiff's assessed reaching limitations (occasional) and the DOT job description for the CAD designer/drafter occupation, which requires frequent reaching. If, on the other hand, the ALJ finds that from November 20, 2008, the alleged onset date, through February 13, 2014, the date of the decision, plaintiff is not capable of performing his past relevant work as a CAD designer/drafter in light of his severe impairments and the RFC limitations, then the ALJ should proceed to step five (if applicable), and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.

### VII.
### CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 1, 2018

*Paul L. Abrams*
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE